IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

KARLA MURPHY, et al.,

      Plaintiffs,

v.                                                        Case No. 3:20-cv-00406

SETZER'S WORLD OF CAMPING, INC., et al.,

      Defendants.


**PROPOSED FINDINGS AND RECOMMENDATIONS**

On June 15, 2020, Plaintiffs Bryan and Karla Murphy ("Plaintiffs" or "the Murphys") filed a *pro se* complaint alleging, *inter alia*, claims for breach of warranty against Defendants Setzer's World of Camping, Inc. ("Setzer's"),[1] Keystone RV Company ("Keystone"), Lynn Butler, and Peoples Bank. (ECF No. 1). On July 13, 2020, Defendant Setzer's filed a crossclaim against Defendant Keystone. (ECF No. 14). Pending before the Court are Setzer's Motion for Partial Dismissal, Keystone's Motion to Dismiss, and Plaintiffs' Motion to Amend Complaint or in the Alternative Remand to State Court. (ECF Nos. 12, 17, 24). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for total pretrial management and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1] In their original complaint, Plaintiffs listed Defendant Setzer's as "Setzer's Camping World of Camping." Subsequent filings indicate that the company name is indeed Setzer's World of Camping, Inc.. Therefore, the Clerk is directed to amend the style of the case to reflect the correct name of Defendant Setzer's.

The undersigned has thoroughly reviewed the materials supplied by the parties. For the reasons that follow, the undersigned **RECOMMENDS** that Keystone's Motion to Dismiss, (ECF No. 17), be **GRANTED**; that Setzer's Motion for Partial Dismissal, (ECF No. 12), be **DENIED** as moot; that Plaintiffs' Motion to Amend Complaint and Alternative Motion to Remand to State Court, (ECF No. 24), be **DENIED**; and that this matter be **DISMISSED**, without prejudice, from the docket of this Court.

## I.    Factual and Procedural Background

The Murphys, a married couple, filed the present action *pro se* on June 15, 2020. (ECF No. 1). According to the Murphys, after much research and deliberation, on June 11, 2018, they selected and purchased from Setzer's, an authorized Keystone dealer, a 2019 Keystone Passport Ultra Lite Model 2920BH Grand Touring Series Travel Trailer. (*Id.* at 3). The Murphys financed the camper through a $26,806.86 loan from Peoples Bank. (*Id.* at 6). The Murphys allege that they were informed by a Setzer's sales representative and by a sticker on the window of the camper that the camper was covered by both a "one-year base warranty and a three-year structural warranty" provided by Keystone, although they were unaware of the precise terms of the warranties before they purchased the camper. (*Id.* at 3, 13; ECF No. 39-2).

The Murphys contend that the trouble began on August 6, 2018, when Mr. Murphy discovered water in the camper's kitchen compartment. (ECF No. 1 at 8). On August 30, the Murphys hired a friend to transport the camper to Setzer's for repairs. (*Id.*). At Setzer's, an inspection revealed more water in the camper's bunk room, bathroom, and kitchen and dining area, and water had also seeped in between walls and flooring. (*Id.* at 8–10). The Murphys assert that even after Setzer's performed repairs, water continued to leak into the camper. (ECF No. 1 at 10–12).

Over the next several months, the Murphys continued to experience issues with water intrusions in the camper, and it was taken to Setzer's for repairs on other occasions. (*Id.* at 15, 23–25). However, the Murphys claim that the repair attempts were unsuccessful, and marked by deceptive behavior and shoddy workmanship, such as covering up a damaged wall panel with a new one rather than replacing it, failing to remove and inspect vents for damage, and using low-quality materials and lumber full of screw holes and knots. (*Id.* at 17–18, 20, 26). The Murphys allege that they argued on several occasions with Defendant Lynn Butler, Setzer's owner and president, and with other Setzer's employees about the cause, and even the existence, of water leaks in the camper. On at least one such occasion, a tense interaction between the Murphys and Ms. Butler left Mrs. Murphy "visibly shaken and upset." (*Id.* at 20).

The Murphys allege that they requested cancellation of the contract from both Setzer's and Keystone numerous times—requests that were refused. (ECF No. 1 at 12, 22, 29, 35). Finally, on August 23, 2019, Keystone offered to replace the Murphys' camper pursuant to the warranty, although Keystone no longer manufactured the model of camper that the Murphys had purchased. (ECF No. 1 at 29). The Murphys rejected the replacement camper models suggested by Keystone, which, according to the Murphys, lacked several features they prized in their original camper, such as a separate bunk room with four bunk beds. (ECF No. 1 at 30, 32, 35). The Murphys suggested a replacement model that they considered similar to their original camper, but Keystone refused to substitute with the model preferred by the Murphys on the basis that it was not an "even trade." (ECF No. 1 at 32).

The Murphys assert that on October 1, 2019, Ms. Butler, along with a Setzer's employee and a representative from Setzer's insurance company, came to the Murphys'

home to inspect the camper and spray it with water to try again to determine the location of leaks. (ECF No. 1 at 36). The interaction between the parties was argumentative and contentious, with Setzer's employee repeatedly accusing Mr. Murphy of spraying water into the refrigerator vent when he was spraying the camper and refusing to acknowledge that water was entering the camper during the test. (*Id.* at 36–39). At one point during the inspection, Lynn Butler used a cloth given to her by the Setzer's employee to wipe water off the counter and entertainment center, and did not apologize or attempt to clean up after realizing the cloth was dirty with the employee's sweat. (*Id.* at 38–39). Following a review of the inspection's findings, on November 20, 2019, Keystone again offered the Murphys a choice between two of its other models to replace their camper, both of which the Murphys had already rejected because they were not sufficiently similar to their original camper. (*Id.* at 45).

The Complaint sets out several claims for relief; including, *inter alia*, breach of contract, revocation of acceptance of the contract, breach of warranties, intentional torts, and negligence. (ECF No. 1 at 46, 49, 55, 59). In the fifteen paragraphs styled as "counts," the Murphys also state some theories of liability which are not properly considered causes of action; for example, Count 13, "Respondeat Superior." (*Id.* at 61). Within the counts, the Murphys draw several legal conclusions from Defendants' behavior, including that Defendants' "disrespect" and "combative and argumentative" nature of their dealings constitute intentional torts, as such treatment would be "shocking to any fair minded or reasonable person." (*Id.* at 55–56).

On July 13, 2020, Ms. Butler and Setzer's filed a crossclaim against Keystone, denying all liability for the matter alleged in the Complaint, and asserting that any liability they may incur is derivative of Keystone's actions. (ECF No. 14). Setzer's also filed a

4

Motion for Partial Dismissal, asserting that some of the counts contained in the Complaint failed to state a claim upon which relief could be granted. (ECF No. 12). On July 21, 2020, Keystone filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction, on the ground that the parties are not of diverse citizenship and the claims do not arise under federal law. (ECF No. 17). Conceding partially to Keystone's argument and agreeing that jurisdiction in this case cannot be based on diversity of citizenship, the Murphys filed a Motion to Amend the Complaint, or in the Alternative, Remand the Case to state court. (ECF No. 24).

The Murphys' motion provides clarification as to their position on the Court's jurisdiction. They assert that their claim may be properly heard by this Court because it arises under the Magnuson-Moss Warranty Act ("MMWA"), as well as the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"). (ECF No. 24 at 5, 12). Because this Court is not empowered to decide cases over which it does not have jurisdiction, the undersigned focuses the analysis below on the Murphys' claims for relief under these two statutes.

## II.    <u>**Standard of Review**</u>

At issue is Keystone's Motion to Dismiss for Lack of Subject Matter Jurisdiction. (ECF No. 17). Article III of the United States Constitution grants authority to federal courts to resolve disputes concerning only certain subject matter. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). Plaintiffs have the burden of establishing that the Court has jurisdiction to hear their claims. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991)).

Defendants may challenge subject matter jurisdiction in one of two ways: a *facial* challenge or a *factual* challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). A facial challenge is one in which the defendant contends that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. By contrast, a factual challenge is presented when the defendant alleges "that the jurisdictional allegations of the complaint [are] not true." *Id.*

Keystone argues that the Murphys have not plead facts "sufficient to invoke federal question jurisdiction." (ECF No. 18 at 2). When, as here, the defendant presents a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192 (4th Cir. 2009). Therefore, in resolving Keystone's motion to dismiss, this Court will accept all of Plaintiffs' factual allegations as true.

## III.  **Discussion**

### A.  *Subject-matter jurisdiction*

The Murphys agree with Keystone that subject matter jurisdiction over their complaint cannot be based on diversity of citizenship, as the Murphys and Defendants Lynn Butler and Setzer's are all citizens of West Virginia. (ECF No. 23 at 3). The Murphys contend, however, that this Court still has jurisdiction over their suit, because it arises under federal law pursuant to 28 U.S.C. 1331. (*Id.* at 4–5). They assert that their complaint states claims under both the MMWA and the Dodd-Frank Act.

#### 1.  *MMWA claim*

The MMWA is a consumer protection statute that regulates warranties on consumer products such as the Murphys' camper. 15 U.S.C. §2301, *et seq.* Relevant here,

it allows a consumer to bring suit if he or she is "damaged by the failure of a...warrantor...to comply with any obligation...under a written warranty, implied warranty, or service contract." 15 U.S.C. § 2310(d)(1). A claim under the MMWA may be brought in either state or federal court; however, jurisdiction in federal court for such claims is limited to suits in which the amount in controversy is at least $50,000, exclusive of interest and costs. 15 U.S.C. § 2310(d)(3)(B). No damages from pendent state law claims can be used in calculating the amount in controversy under the MMWA. *Golden v. Gorno Bros., Inc., 274* F. Supp. 2d 913 (E.D. Mich. 2003), *aff'd*, 410 F.3d 879 (6th Cir. 2005). Likewise, attorneys fees and costs are excluded from the calculation. *Saval v. BL Ltd.,* 710 F.2d 1027, 1032 (4th Cir. 1983).

The Murphys figure the damages for their claims total $69,492.72, even before considering punitive damages. (ECF No. 23 at 12). This includes not only the $26,806.86 purchase-money loan and the trade-in value of their old camper, but also expenses such as towing, water to spray the camper to test for leaks, property taxes, attorneys fees, and insurance premiums. (*Id.* at 7–8). In addition, the Murphys seek compensation on several other bases, including, for example, $2,000 per camping season missed, $7,500 for "wasted time" spent selecting the camper and pursuing this litigation, and $5,000 for "annoyance and inconvenience." (*Id.* at 8–10).

The amount in controversy in an MMWA claim is limited by the damages available under state law. "Since the MMWA adopts, rather than supplants, state contract law, the Court must from the outset determine which state's laws govern Plaintiffs' MMWA claim." *Harper v. Navistar, Inc.*, No. 2:15-CV-03558, 2016 WL 1178782, at *2 (S.D.W. Va. Mar. 23, 2016); *see also Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989) (explaining that the MMWA "operates *in conjunction with state law* to regulate the

warranting of consumer products") (emphasis in original). The Murphys are citizens of and filed this action in West Virginia, and the contract giving rise to the dispute was formed in West Virginia when the Murphys purchased the camper at Setzer's. Thus, the Court looks to West Virginia law to determine the measure of damages available to the Murphys under the warranties.

The warranties at issue include three provisions particularly relevant to this Court's jurisdictional inquiry. The first two are near identical statements in both the base warranty and the structural warranty in which Keystone conspicuously disclaims liability for "incidental or consequential damages of any kind or nature that result from any defect in the recreational vehicle." (ECF Nos. 1 at 14, 39-7 at 14–15). The third is a choice of law provision which states, again conspicuously, in all capital letters, that suits brought to enforce the camper's warranties "will be governed by the laws of the state of Indiana," which is the state where the camper was manufactured. (ECF Nos. 1 at 15, 39-7 at 18).

West Virginia and Indiana have conflicting statutes governing damages for breach of warranty. Although West Virginia law does not enforce warranty provisions that limit incidental and consequential damages, W. Va. Code § 46A-6-107 (2), Indiana law allows such disclaimers. Ind. Code § 26-1-2-719. The question then becomes whether, in light of the choice of law provision in the warranty, a West Virginia court would apply its own, or Indiana's, law of damages. "To determine the applicable law, we need to examine the effectiveness of the choice of law provision...." *Gen. Elec. Co. v. Keyser*, 275 S.E.2d 289, 292 (W. Va. 1981).

West Virginia courts will enforce a choice of law provision unless "the chosen state has no substantial relationship to the parties or the transaction, or when the application of the law of the chosen state would be contrary to a fundamental public policy of the state

whose law would apply in the absence of a choice of laws provision." *Gen. Elec. Co.,* 275 S.E.2d 289, 293 (W. Va. 1981); *see also Moundsville Water Bd. v. Shook Heavy & Envtl. Div., Liberty Mut. Ins. Co.*, No. CIVA 5:09CV113, 2010 WL 2571228, at *3 (N.D.W. Va. June 22, 2010). In the present action, the Murphys are suing for breach of Keystone's warranties. Although the Murphys purchased the camper from a dealer in West Virginia, the warrantor, Keystone, is an Indiana corporation and manufactured the camper at its Indiana plant. Given these facts, a West Virginia court would enforce the choice of law provision in the warranty. *See Bordeaux Capital Inc. v. United States Methanol Corp.*, No. 2:18-CV-01262, 2020 WL 2770418, at *5 (S.D.W. Va. May 28, 2020) (applying West Virginia law and finding that when a plaintiff is incorporated and provided services from its offices in Ontario, the Ontario choice of law provision is enforceable); *Blackrock Capital Inv. Corp. v. Fish*, 799 S.E.2d 520, 527 (W. Va. 2017) (holding that a New York choice of law clause is enforceable even when the transaction at issue is a personal injury suit by West Virginia residents following an explosion at a West Virginia plant). Even when, as in this case, the chosen source of law mandates a different remedy than would West Virginia law, West Virginia allows enforcement of the choice of law clause. *See West Virginia CVS Pharmacy, LLC v. McDowell Pharmacy, Inc.*, 796 S.E.2d 574, 580 (W. Va. 2017) (reversing lower court's decision not to compel arbitration based on West Virginia law when an Arizona choice of law clause applied). Moreover, the Murphys do not argue, and there is no basis for this Court to conclude, that Indiana law would be contrary to a fundamental public policy of this state.

Turning then to the measure of damages available for breach of the Keystone warranties under Indiana law, in Indiana, disclaimers of consequential and incidental damages in express warranties are valid unless unconscionable. *See, e.g., Smith v. Nexus*

*RVs, LLC*, No. 317-CV-00815 DRL-MGG, 2020 WL 3403178, at *11 (N.D. Ind. June 19, 2020); *see also Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc.*, 746 N.E.2d 941, 946 (Ind. 2001) (examining the limits of Indiana Code §§ 26-1-2-719). Generally, limitations of consequential damages for injury to the person are unconscionable, while limitations of damages where the loss is commercial are not. *Rheem,* 746 N.E.2d at 946. Indiana has adopted the UCC's definitions of incidental and consequential damages. Ind. Code § 26-1-2-715.

While the Murphys' brief in response to Keystone's Motion to Dismiss itemizes the damages sought, those which would not be allowed under Indiana law cannot be used to calculate the amount in controversy. Many of the damages the Murphys claim are properly categorized as incidental or consequential. For example, $100 paid to a friend to take the camper to Setzer's for repair, (ECF No. 24 at 7), is clearly an "expense[] reasonably incurred in … transportation and care … of goods rightfully rejected" under Indiana's definition of incidental damages. Ind. Code § 26-1-2-715 (1). Likewise, other asserted costs associated with Keystone's alleged breach of its warranty—for example, the sentimental value of missed family vacations in the amount of $2,000 per camping season (ECF No. 24 at 8)—are consequential damages under Indiana law. *Id.* § 26-1-2-715 (2).

While acknowledging that attorney fees cannot be used to calculate the jurisdictional amount, the Murphys nevertheless ask that the attorney fees they incurred prelitigation be included. (ECF No. 24 at 9). As previously stated, attorney fees, although recoverable following a successful MMWA suit, are not considered as part of the jurisdictional amount in controversy. *Saval*, 710 F.2d at 1032. Insofar as these expenses may be considered consequential damages to the alleged breach of warranty, the analysis above applies to these prelitigation attorney fees as well.

The Murphys also ask for punitive damages and contend that such damages should be included in calculation of the jurisdictional amount for the MMWA claim. (ECF No. 24 at 10). Punitive damages may be included in calculation of the jurisdictional amount unless such damages would be barred under state law. *Saval,* 710 F.2d at 1033-34 (rejecting claim on ground that Maryland law did not permit punitive damages under facts alleged). "[C]laims for punitive damages proffered for the purpose of achieving the jurisdictional amount should be carefully examined." *Id.* at 1034. Like West Virginia, Indiana does not ordinarily allow punitive damages for breach of warranty. *Vernon Fire & Casualty Co. v. Sharp*, 264 Ind. 599 (1976). However, punitive damages may be available if the plaintiff pleads and proves "the existence of an independent tort of the kind for which Indiana law recognizes that punitive damages may be awarded." *Miller Brewing Co. v. Best Beers of Bloomington*, Inc., 608 N.E.2d 975, 983–84 (Ind. 1993) (explaining and clarifying the limits of *Vernon*'s applicability in breach of contract claims).

Because the MMWA claim is based on breach of warranty and Keystone is the warrantor, the Murphys' allegations concerning Keystone's behavior is examined to determine if they have asserted facts tending to prove that the alleged breach of warranty constitutes an independent tort. The Murphys advance that Keystone's breach of warranty was fraudulent because the warranties themselves are illusory due to the second sentence of the warranty document indicating that "neither limited warranty is a guarantee about the RV for any time period." (ECF No. 24 at 11). They further assert that this illusory warranty was used to mislead them into purchasing the camper when the warranty did not actually promise anything. (*Id.*). This argument is unavailing. The warranty is not illusory, and in fact binds Keystone to correct defects, make repairs, and

provide a replacement subject to the warranty terms. The fact that it is does not "guarantee" the camper itself does not mean that it is not an enforceable legal instrument.

According to the Murphys, Keystone, after reviewing the unit's repair history, offered the Murphys a new camper pursuant to the warranty and $1,500 in attorney fees. (ECF No. 1 at 29). While this Court will not decide whether Keystone breached its warranty duties, clearly an enforceable warranty exists, and under the facts alleged Keystone has not attempted to avoid its terms or construe its duties as illusory. As such, the allegations proffered by the Murphys do not demonstrate that Keystone's alleged breach of warranty rises to the level of an independent tort. While Defendants' failure to swiftly cure all defects in the camper or provide a replacement to the Murphys' satisfaction may be bad business, absent allegations of an independent tort, punitive damages are unavailable under state law. The Murphys' allegations also indicate that their dealings with Defendants Setzer's and Lynn Butler have been strained and upsetting, but it is only the *warrantor's* behavior that can give rise to a claim under the MMWA.

Under Indiana law, the "measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Ind. Code 26-1-2-714. Here, where the total sale price of the camper according to the sales contract is $39,268.64, and the warranty at issue disclaims incidental and consequential damages, it is not possible for the Murphys to assert breach of warranty damages in an amount greater than $50,000. (ECF No. 39-1 at 1). Because the amount in controversy is insufficient, the undersigned **FINDS** that jurisdiction over the Murphys' MMWA claim does not rest in this Court.

12

### 2. *Dodd-Frank Act claim*

The Murphys also allege that this Court has jurisdiction over their complaint because it arises under the Dodd-Frank Act, 12 U.S.C. § 5481*, et seq.* (ECF No. 24 at 12). They base this contention on their assertion that Lynn Butler and Setzer's engaged in an "unfair, deceptive, or abusive act or practice." (*Id.* at 12–13); 12 U.S.C. § 5536(a)(1)(B). They further explain that Ms. Butler and Setzer's are "covered persons" because they facilitated the Murphys' financing with Peoples Bank to purchase the camper and therefore provided financial services pursuant to the definition of a covered person under § 5481 (6). (ECF No. 24 at 13). According to the Murphys, Keystone is also implicated because, under § 5531, it provided substantial assistance to Setzer's in its deceptive acts. (*Id.*).

The Dodd-Frank Act simply does not apply here. A "covered person" governed by the Act is "any person that engages in offering or providing a consumer financial product or service" and "any affiliate" of such a person. 12 U.S.C § 5481(6). Under the facts alleged, Setzer's does not provide financial advisory services or products; it sells campers. Like many sellers of expensive consumer goods, Setzer's facilitates financing through third-party banks, but by no means does this imply that Setzer's is a financial advisor. When applying the Murphys' interpretation, any seller of products paid for by a purchase-money loan would be liable as a financial advisor under the Dodd-Frank Act, which clearly is not the intent of the Act. Furthermore, courts that have considered the issue have declined to recognize the existence of a private cause of action for violations of §§ 5531 and 5536 of the Dodd-Frank Act. *See Maddox v. CitiFinancial Mortg. Co.*, No. 5:18CV00041, 2018 WL 1547362, at *1 (W.D. Va. Mar. 29, 2018) (collecting cases); *also Bonilla v. Am. Heritage Fed. Credit Union*, No. CV 20-2053, 2020 WL 2219141, at *10 (E.D. Pa. May 7,

2020) ("The Dodd-Frank Act vests authority in the Consumer Financial Protection Bureau to enforce section 5531. There is no private right of action under section 5531 and 'courts have commonly declined to read private causes of action into provisions of Dodd–Frank that do not explicitly provide for them.'") (quoting *Beider v. Retrieval Masters Creditors Bureau, Inc.*, 146 F.Supp.3d 465, 472 (E.D.N.Y. 2015)). In summary, because Defendants are not "covered persons" under the Act, and a private cause of action for violations of §§ 5531, 5536 is not expressly recognized in the Act, the undersigned **FINDS** that Plaintiffs fail to state a federal question under the Dodd-Frank Act.

### B. Motion to Amend Complaint or Remand

The Murphys request remand of their action to state court if subject matter jurisdiction is lacking in this Court. (ECF No. 24 at 14). Unfortunately, remand is not an option under the circumstances. Federal Rule of Civil Procedure 12(h)(3) provides that if a federal court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." The Murphys point to 28 U.S.C. § 1447, which allows remand of claims to state court upon a finding of a lack of subject matter jurisdiction, as a basis for their request. (ECF No. 24 at 14). However, the statute only allows remand to state court when the case was *originally* brought in state court and was later removed to federal court based on an erroneous assumption of jurisdiction. *McLaughlin v. Arco Polymers, Inc.*, 721 F.2d 426, 428–29 (3d Cir. 1983). While this Court may transfer a case to another *federal* court under 28 U.S.C. § 1631 "if it is in the interest of justice," the Court is not empowered to transfer a case to state court when there is an absence of jurisdiction. *Id.* (holding that transfer to state court was impermissible and detailing the legislative history of § 1631); *also Bryan v. Nettles*, 416 F. App'x 296, 297 (4th Cir. 2011) ("[A] federal court lacks authority to transfer a case over which it lacks jurisdiction to state court.")

14

With respect to the Murphys' request to amend their complaint under 28 U.S.C. § 1653, such a request cannot be granted. Title 28 U.S.C. § 1653 provides that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." The Supreme Court of the United States has explained, however, that § 1653 allows amendments only to remedy "incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 831 (1989). "In *Newman–Green,* the Supreme Court rejected an interpretation of section 1653 that 'would empower federal courts to amend a complaint so as to produce [subject matter] jurisdiction where none actually existed before.'" *Sharp v. Town of Kitty Hawk, N.C.,* No. 2:11-CV-13-BR, 2011 WL 3269416, at *2 (E.D.N.C. July 29, 2011) (citing *Newman–Green,* 490 U.S. at 831). "The reason for the limitation on the district court's power to authorize an amendment is apparent: never having had power to act in the matter, the court never had authority to permit an amendment to the complaint." *Id.*

Because this Court lacks subject matter jurisdiction over this case, and the complaint was not originally filed in state court, the undersigned **FINDS** that the complaint must be dismissed, rather than remanded or transferred. In addition, because this Court is precluded from allowing an amendment to the complaint when subject matter jurisdiction does not exist, the undersigned further **FINDS** that the Murphys' motion to amend should be denied.

### III.  <u>Proposal and Recommendations</u>

For the aforementioned reasons, the undersigned respectfully **PROPOSES that** Keystone's Motion to Dismiss, (ECF No. 17), be **GRANTED**; that Setzer's Motion for Partial Dismissal, (ECF No. 12), be **DENIED** as moot; that Plaintiffs' Motion to Amend

Complaint and Alternative Motion to Remand to State Court, (ECF No. 24), be **DENIED**; and that this matter be **DISMISSED**, without prejudice, from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiffs and counsel of record.

**FILED:** September 15, 2020

Cheryl A. Eifert
United States Magistrate Judge

16