IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

KARLA MURPHY, et al.,

    Plaintiffs,

v.                                                              CIVIL ACTION NO. 3:20-0406

SETZER'S WORLD OF CAMPING, INC., et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This action was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge has submitted her Proposed Findings and Recommendations ("PF&R") (ECF No. 40), and Plaintiffs timely filed their objections (ECF No. 41). Consistent with this Opinion, the PF&R (ECF No. 40) is **REJECTED IN PART** and **ADOPTED IN PART**. The Court **DENIES** Keystone's Motion to Dismiss (ECF No. 17), **DENIES** Plaintiffs' Motion to Amend or Remand (ECF No. 24), and **GRANTS** Defendant Setzer's Motion for Partial Dismissal (ECF No. 12).

**I. STANDARD OF REVIEW**

Under the Federal Magistrates Act of 1968, district courts are responsible for making "a de novo determination upon the record . . . of any portion of [a] magistrate judge's disposition to which specific written objection has been made." Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1)(C). Courts need not review portions to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 149-50 (1985). Nor are courts tasked with conducting de novo review of "general and conclusory objections" that fail to direct a judge to specific errors in a magistrate judge's

1

findings and recommendations. *Orpiano v. Johnson*, 687 F.2d 44, 47-48 (4th Cir. 1982). The same is true of objections that only reiterate earlier factual or legal assertions. *Reynolds v. Saad*, No. 1:17-124, 2018 WL 3374155, at *3 (N.D.W. Va. July 11, 2018), aff'd 738 F. App'x 216 (4th Cir. 2018). That said, courts maintain wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations" of a magistrate judge. 28 U.S.C. § 636(b)(1)(C).

## II. PROCEDURAL BACKGROUND

Plaintiffs filed this suit *pro se* against Setzer's World of Camping, Inc. ("Setzer's"), People's Bank, Keystone RV Company ("Keystone") and Lynn Butler (collectively, "Defendants") on June 15, 2020. Among other things, the Complaint alleges that Defendants are liable for manufacturing and selling a defective camper to Plaintiffs. On July 13, 2020, Setzer's filed a Motion for Partial Dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6). ECF No. 12. On July 21, 2020, Keystone filed its "Motion to Dismiss Due to Lack of Subject Matter Jurisdiction." ECF No. 17. Plaintiffs responded in opposition to both motions and filed a motion seeking to amend the Complaint to add a new claim under the Dodd-Frank Wall Street Reform and Consumer Protection Act. ECF No. 24. Alternatively, Plaintiffs asked the Court to remand the case to state court. The Court referred all of the above motions to Magistrate Judge Eifert.

Magistrate Judge Eifert subsequently issued her findings of fact and recommended that the matter be dismissed without prejudice for lack of subject matter jurisdiction. The Magistrate Judge reached this conclusion after finding that the parties are not diverse and that the Complaint did not raise a plausible federal question because the claims under the Magnusson-Moss Warranty Act ("MMWA") and the Dodd-Frank Act fail as a matter of law. The Magistrate Judge also found that the case could not be remanded under 28 U.S.C. § 1447 because Plaintiffs did not start this action in state court. As such, the Magistrate Judge recommended Keystone's "Motion

to Dismiss for Lack of Subject Matter Jurisdiction" be granted, that Setzer's "Motion for Partial Dismissal" be denied as moot, and that Plaintiffs' "Motion to Amend the Complaint, and in the Alternative, Motion to Remand to State Court" be denied.

Plaintiffs did not object to the Magistrate Judge's findings regarding their motion to amend or remand. Therefore, the Court **ADOPTS** these findings and **DENIES** Plaintiffs' motion (ECF No. 24). Plaintiffs, however, object to the Magistrate Judge's other findings on numerous grounds. Plaintiffs concede that this case does not satisfy the requirements for diversity jurisdiction but argue that the Court has federal question jurisdiction because their MMWA claims are proper. The Court will address these arguments below after summarizing the facts alleged in the Complaint.

### III. FACTUAL BACKGROUND

The Complaint contains the following allegations, which the Court must accept as true for the purposes of a motion to dismiss. On June 11, 2018, Plaintiffs bought a 2019 Keystone trailer camper from Setzer's. Plaintiffs applied for and received a loan for the camper through Setzer's finance department, and Setzer's assigned the loan to People's Bank. On June 16, 2018, Plaintiffs signed the Retail Installment Contract and Security Agreement ("Sales Contract"). The Sales Contract stated that the warranty was to be provided separately. However, Plaintiffs allege that they did not receive a separate warranty when they signed the Sales Contract.

On or around August 6, 2018, Plaintiffs noticed water damage inside the camper. A few weeks later, Plaintiffs brought the camper to Setzer's for inspection and repair. On September 21, 2018, Plaintiffs picked up the camper from Setzer's. However, after this attempted repair, Plaintiffs allege that the camper still suffered water leaks and damage.

On or around November 5, 2018, Plaintiffs notified Setzer's that the leaks persisted and

requested a replacement or refund. Setzer's "insisted" on another opportunity to repair the camper and instructed its employee to pick up the camper and "repair it in accordance with the keystone agreement[.]" Compl. ¶ 132, ECF No. 1. Lynn Butler, the President of Setzer's, explained that the "keystone agreement" was the warranty contained in the owner's manual of the camper (hereinafter "Owner's Manual Warranty" or "OMW"). Plaintiffs allege that they were not made aware of the OMW until that date but "immediately" located it in the camper, reviewed it, and agreed to permit Setzer's to pick up the camper. *Id*. at ¶ 140.

On November 19, 2018, Plaintiffs went to Setzer's to inspect the camper at Butler's request. Plaintiffs did not accept the repairs and claimed that Setzer's had not addressed their concerns. The parties continued to dispute the scope of the necessary repairs through the spring. Setzer's attempted to repair the camper again at the end of March 2019, but the leaks continued through July. Soon after, Keystone offered to replace Plaintiffs' camper and pay their attorneys' fees. Because Keystone no longer made the model Plaintiffs purchased, Keystone offered another model. However, Plaintiffs rejected the proposed replacement because they believed that it was not sufficiently similar to the model they purchased. Plaintiffs requested another model that they believed to be more similar, but Keystone rejected Plaintiffs' request. On September 4, 2019, Plaintiffs requested a refund and other damages.

On October 1, 2019, Plaintiffs and Setzer's employees inspected the camper together. Using a hose to mimic rain, the parties agreed that there were three or more sources of leaks. About a month later, Keystone informed Plaintiffs that it had reviewed the findings from the inspection and again offered two models that Plaintiffs had previously rejected. Plaintiffs rejected the offer again and filed suit.

## IV. ANALYSIS

**A. Subject Matter Jurisdiction under the Magnuson-Moss Warranty Act**

To establish subject matter jurisdiction, the Court must find that the Complaint raises an issue "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331. A case may "arise under" federal law when a federal statute creates a cause of action. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562 (2016). Contrary to Keystone's contentions otherwise, the Complaint need not rely exclusively on federal law to remain in federal court. If the Complaint raises at least one federal question, the Court may exercise supplemental jurisdiction over state claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Given that the Complaint only alleges federal claims under the MMWA, the validity of those claims will determine whether the Court has subject matter jurisdiction.

The MMWA authorizes consumers to file suits in federal court for a warrantor's failure to comply with any obligation imposed by the act or imposed by a written warranty, implied warranty, or service contract. 15 U.S.C. § 2310(d)(1). However, federal courts do not have jurisdiction over a MMWA claim unless the total amount in controversy is at least $50,000 (exclusive of interest and costs). *Id*. Because the MMWA is silent on the question of remedies, courts apply state law to determine the potential amount in controversy. *Harper v. Navistar, Inc.*, No. 2:15-cv-03558, 2016 U.S. Dist. LEXIS 37473, at *6 (S.D. W. Va. Mar. 23, 2016); *see also Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989).

The Magistrate Judge found that Plaintiffs' allegations did not meet this jurisdictional threshold. Upon review of the OMW, which Plaintiffs submitted to the Court (ECF No. 39-7), the Magistrate Judge found that Indiana law applied, that the OMW's limitation on incidental

5

and consequential damages was enforceable under Indiana law, and that, in light of this limitation, Plaintiffs' recoverable damages were less than $50,000. Plaintiffs' primary objection is that the terms of the OMW cannot be enforced because they never accepted the OMW, or alternatively, because the OMW is unconscionable. The Magistrate Judge neither analyzed the validity of the OMW nor Plaintiffs' claim of unconscionability. The Court will address these objections below after determining the applicable law.

(1) Choice of Law

"Since the MMWA adopts, rather than supplants, state contract law, the Court must from the outset determine which state's laws govern Plaintiffs' MMWA claim." *Harper*, 2016 WL 1178782 at 2 (internal citation omitted). To resolve this issue, the Court will apply West Virginia choice of law rules.[1] West Virginia law provides that "the law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation." *Gen. Elec. Co. v. Keyser*, 275 S.E.2d 289, 293 (W. Va. 1981) (quoting *Mich. Nat'l Bank v. Mattingly*, 212 S.E.2d 754 (W. Va. 1975)). This rule is known as *lex loci delicti*, which "has long been the cornerstone" of West Virginia's conflicts doctrine. *Paul v. Nat'l Life*, 352 S.E.2d 550, 555 (W. Va. 1986). Applying this rule, courts have held that when the formation of a

---

[1] The Fourth Circuit has not resolved whether federal or state choice of law rules apply to cases brought under federal question jurisdiction. *See JAAAT Tech. Servs., LLC v. Tetra Tech Tesoro, Inc.*, Civil Action No. 3:15-cv-235, 2017 U.S. Dist. LEXIS 146685, at *15 (E.D. Va. Sep. 11, 2017) ("[D]etermining the applicable choice-of-law rules requires, at a minimum, creative reasoning."). However, other district courts in this circuit have held that "[i]n a federal question case that incorporates a state law issue, such as contract formation, a district court applies the choice-of-law rules of the state in which it sits unless a compelling federal interest directs otherwise." *See, e.g.*, *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 387 (D. Md. 2011) (citing *Johnson v. Carmax, Inc.*, No. 3:10-CV-213, 2010 U.S. Dist. LEXIS 70700, 2010 WL 2802478, at n. 13 (E.D. Va. July 14, 2010)). Therefore, the Court will adopt West Virginia choice of law rules to determine which state's laws apply.

contract is disputed, the court must apply the contract law of the state where the last event necessary to make a contract binding occurs. *Tow v. Miners Mem'l Hosp. Asso.*, 305 F.2d 73, 75 (4th Cir. 1962). Here, the Complaint alleges that all events related to the formation of the OMW took place in West Virginia. Therefore, the Court will apply West Virginia law to determine whether the OMW is valid and enforceable.

   (2) Contract Acceptance

  Applying West Virginia law, the Court will now consider whether the OMW was validly formed. Based on the factual allegations in the Complaint, the Court has identified two possible theories of formation: (1) that Plaintiffs accepted the OMW when they signed the Sales Contract because it was incorporated by reference, or (2) that Plaintiffs unilaterally accepted the OMW.

  To uphold the validity of terms in a document incorporated by reference, the following must be present:

> (1) the writing must make a clear reference to the other document so that the parties' assent to the reference is unmistakable; (2) the writing must describe the other document in such terms that its identity may be ascertained beyond doubt; and (3) it must be certain that the parties to the agreement had knowledge of and assented to the incorporated document so that the incorporation will not result in surprise or hardship.

*Evans v. Bayles*, 787 S.E.2d 540 (W. Va. 2016).

  A facial review of the Complaint and Sales Contract demonstrates that these elements are not met. The Sales Contract does not identify the OMW by name or any other identifying feature. It merely states: "Warranty information is provided to you separately." ECF No. 39-1. Moreover, based on the allegations in the Complaint, it does not appear that Setzer's physically attached the OMW to the Sales Contract or otherwise identified the OMW to Plaintiffs at the time of sale. Therefore, the Court cannot conclude that Plaintiffs accepted the OMW when they signed the Sales Contract.

Next, the Court must consider whether Plaintiffs accepted the OMW as an independent contract. The West Virginia Supreme Court of Appeals has long recognized and enforced unilateral contracts: "acceptance may be effected by silence accompanied by an act of the offeree which constitutes a performance of that requested by the offeror . . . . " *Citynet, LLC v. Toney*, 772 S.E.2d 36, 41-42 (W. Va. 2015) (quoting *First National Bank [of Gallipolis] v. Marietta Manufacturing Co.*, 153 S.E.2d 172, 176 (W. Va. 1967)) (internal quotation marks omitted).

According to the Complaint, Setzer's told Plaintiffs that an employee would "pick up the camper and 'repair it in accordance with the [OMW].'" Compl. ¶ 132. Although Plaintiffs alleged that they had not seen this agreement before, they admit that they obtained a copy from inside their camper and reviewed it "immediately." *Id*. at ¶ 140. They further admit that the warranty states: "WHEN YOU REQUEST AND ACCEPT THE PERFORMANCE OF WARRANTY REPAIRS UNDER THE TERMS OF EITHER LIMITED WARRANTY, YOU ARE ACCEPTING ALL TERMS OF BOTH LIMITED WARRANTIES." *Id*. at ¶ 151 (emphasis in original); ECF No. 39-7. After reviewing the OMW, Plaintiffs "agreed the camper would be picked up the next day to permit Setzer's another attempt at diagnosing and repairing the camper." *Id*. at ¶ 133. Under these allegations, the Court must reject Plaintiffs' argument that they did not accept the OMW.

        (3) Unconscionability

Plaintiffs next argue that the OMW is unconscionable. West Virginia law prohibits clauses and contracts which are unconscionable. *See* W.Va. Code § 46A-2-121. "Unconscionability in West Virginia . . . requires both 'gross inadequacy in bargaining power' and 'terms unreasonably favorable to the stronger party.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 (4th Cir. 2002) (quoting *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749 (W.

Next, the Court must consider whether Plaintiffs accepted the OMW as an independent contract. The West Virginia Supreme Court of Appeals has long recognized and enforced unilateral contracts: "acceptance may be effected by silence accompanied by an act of the offeree which constitutes a performance of that requested by the offeror . . . . " *Citynet, LLC v. Toney*, 772 S.E.2d 36, 41-42 (W. Va. 2015) (quoting *First National Bank [of Gallipolis] v. Marietta Manufacturing Co.*, 153 S.E.2d 172, 176 (W. Va. 1967)) (internal quotation marks omitted).

According to the Complaint, Setzer's told Plaintiffs that an employee would "pick up the camper and 'repair it in accordance with the [OMW].'" Compl. ¶ 132. Although Plaintiffs alleged that they had not seen this agreement before, they admit that they obtained a copy from inside their camper and reviewed it "immediately." *Id*. at ¶ 140. They further admit that the warranty states: "WHEN YOU REQUEST AND ACCEPT THE PERFORMANCE OF WARRANTY REPAIRS UNDER THE TERMS OF EITHER LIMITED WARRANTY, YOU ARE ACCEPTING ALL TERMS OF BOTH LIMITED WARRANTIES." *Id*. at ¶ 151 (emphasis in original); ECF No. 39-7. After reviewing the OMW, Plaintiffs "agreed the camper would be picked up the next day to permit Setzer's another attempt at diagnosing and repairing the camper." *Id*. at ¶ 133. Under these allegations, the Court must reject Plaintiffs' argument that they did not accept the OMW.

    (3) Unconscionability

Plaintiffs next argue that the OMW is unconscionable. West Virginia law prohibits clauses and contracts which are unconscionable. *See* W.Va. Code § 46A-2-121. "Unconscionability in West Virginia . . . requires both 'gross inadequacy in bargaining power' and 'terms unreasonably favorable to the stronger party.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 (4th Cir. 2002) (quoting *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749 (W.

Next, the Court must consider whether Plaintiffs accepted the OMW as an independent contract. The West Virginia Supreme Court of Appeals has long recognized and enforced unilateral contracts: "acceptance may be effected by silence accompanied by an act of the offeree which constitutes a performance of that requested by the offeror . . . . " *Citynet, LLC v. Toney*, 772 S.E.2d 36, 41-42 (W. Va. 2015) (quoting *First National Bank [of Gallipolis] v. Marietta Manufacturing Co.*, 153 S.E.2d 172, 176 (W. Va. 1967)) (internal quotation marks omitted).

According to the Complaint, Setzer's told Plaintiffs that an employee would "pick up the camper and 'repair it in accordance with the [OMW].'" Compl. ¶ 132. Although Plaintiffs alleged that they had not seen this agreement before, they admit that they obtained a copy from inside their camper and reviewed it "immediately." *Id*. at ¶ 140. They further admit that the warranty states: "WHEN YOU REQUEST AND ACCEPT THE PERFORMANCE OF WARRANTY REPAIRS UNDER THE TERMS OF EITHER LIMITED WARRANTY, YOU ARE ACCEPTING ALL TERMS OF BOTH LIMITED WARRANTIES." *Id*. at ¶ 151 (emphasis in original); ECF No. 39-7. After reviewing the OMW, Plaintiffs "agreed the camper would be picked up the next day to permit Setzer's another attempt at diagnosing and repairing the camper." *Id*. at ¶ 133. Under these allegations, the Court must reject Plaintiffs' argument that they did not accept the OMW.

    (3) Unconscionability

Plaintiffs next argue that the OMW is unconscionable. West Virginia law prohibits clauses and contracts which are unconscionable. *See* W.Va. Code § 46A-2-121. "Unconscionability in West Virginia . . . requires both 'gross inadequacy in bargaining power' and 'terms unreasonably favorable to the stronger party.'" *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 502 (4th Cir. 2002) (quoting *Troy Mining Corp. v. Itmann Coal Co.*, 346 S.E.2d 749 (W.

Va. 1986)). In other words, both substantive and procedural unconscionability are required. To determine whether these elements are met, the Court must consider the particular facts of the case. *See Orlando v. Finance One of West Virginia, Inc.*, 369 S.E.2d 882, 883 Syll. 2 (1988).

In support of their objection, Plaintiffs point to *Carlson*, 883 F.2d 287, a decision in which the Fourth Circuit considered whether an express warranty imposing a durational limit on all implied warranties was "reasonable" and "conscionable" under the MMWA. *Carlson*, 883 F.2d at 292. Although *Carlson* did not apply West Virginia law, this Court finds its analysis instructive. The Fourth Circuit started its analysis by noting that "unconscionability claims should but rarely be determined on the bare-bones pleadings—that is, with no opportunity for the parties to present relevant evidence of the circumstances surrounding the original consummation of their contractual relationship." *Id*. As such, the court held that the district court erred in dismissing the complaint because the plaintiffs should have had the opportunity to present evidence that they had no meaningful choice but to accept the express warranty or that the terms unreasonably favored the seller. *Id*. at 296. The court also reviewed the complaint and held that the plaintiffs "more than sufficiently" pleaded unconscionability. Specifically, the court noted that if, as the plaintiffs alleged, the defendant knew of certain defects but failed to warn consumers, the durational limitations on implied warranties would be unconscionable within meaning of MMWA. *Id*. at 294-96.

As noted above, Plaintiffs plausibly alleged that they did not accept the OMW until at least November 2018. The Complaint states that by that time, Setzer's had already failed to repair the camper once and refused to give Plaintiffs a replacement or refund. After this refusal, "Setzer's insisted on another opportunity to diagnose and fix the camper" and "instructed [an employee] to pick up the camper and repair it in accordance with the [OMW]." Compl. ¶ 132

(internal quotations omitted). Although Plaintiffs were able to locate the OMW and review it for the first time, the Complaint indicates that they had no meaningful choice but to accept Setzer's offer. Setzer's and Keystone's bargaining power grossly exceeded Plaintiffs' because Plaintiffs had already purchased the camper and notified Setzer's of its defects. Given that Setzer's had already failed to repair the camper and refused to provide a replacement or refund, Plaintiffs were left with only two options: accept Setzer's offer and sacrifice their potential remedies or accept the defective camper. This is not a meaningful choice. The Court also finds that the terms of the agreement unreasonably benefit the warrantor by limiting incidental and consequential damages, including expenses Plaintiffs incurred when trying to fix a defect Keystone and Setzer's allegedly knew about but failed to disclose. *See id*. at ¶ 444 (Setzer's employee stated that Keystone campers leak "a lot of times.") For these reasons, the Court finds that Plaintiffs have alleged a plausible unconscionability claim.

   (4) Breach of Implied Warranty

Setting the OMW aside, the Court also finds that the Magistrate Judge erred by recommending dismissal without considering Plaintiffs' breach of implied warranty claim under the MMWA against Setzer's. It is possible that the Magistrate Judge did not analyze this claim because the OMW disclaimed all implied warranties. However, even if the Plaintiffs had not sufficiently pleaded an unconscionability claim, this type of disclaimer is likely unenforceable under the MMWA. *See* 15 U.S.C. § 2308 (prohibiting disclaimers of implied warranties where the warrantor issues an express warranty or service contract). Accordingly, the Court must consider whether subject matter jurisdiction is established by this claim.

The MMWA permits individuals to bring actions for breach of an implied warranty. 15 U.S.C. § 2310. Such warranties are defined by the act as "arising under State law (as modified by

Sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." *Id.* at § 2301. Under West Virginia law, an implied warranty arises out of a contract for the sale of consumer goods. W. Va. Code § 46-2-314. Plaintiffs have alleged that they had a contract with Setzer's for the sale of the camper. *See* Sales Contract, ECF No. 39-1. Plaintiffs further allege that Setzer's breached the implied warranty arising from that contract by failing to repair, replace, or refund the camper after numerous attempts to cure. Thus, Plaintiffs have sufficiently pleaded a breach of implied warranty claim under the MMWA against Setzer's.[2]

(5) Amount in Controversy

The Court must next determine whether the Plaintiffs have satisfied the MMWA's $50,000 amount-in-controversy requirement under this claim. The amount sought in the complaint ordinarily determines the amount in controversy, so long as the plaintiff has advanced the figure in good faith. *Lanier v. Norfolk Southern Corp.*, 256 F. App'x 629, 631-32 (4th Cir. 2007) (citing *Wiggins v. North Am. Equitable Life Assur. Co.*, 644 F.2d 1014, 1016-17 (4th Cir. 1981)). Courts may only dismiss a claim "if it appears to a legal certainty" that the amount has not been satisfied. *Id*.

Plaintiffs claim the following damages:

| | |
|---|---|
| $26,806.86 | Camper Financing |
| $2,000.00 | Value of Trade-in [3] |
| $100.00 | Towing Costs |
| $75.00 | Water/Sewage |
| $100.00 | Anti-freeze |
| $1,000.00 | Personal Property Taxes |

---

[2] The Court expresses no opinion as to whether a similar cause of action may be advanced against Keystone.

[3] Plaintiffs claim that the value of the trade-in is $2,500. However, the Sales Contract states that the Plaintiffs were credited $2,000.

      $1,141.00  Insurance
      $2,340.00  Storage for Camper
      $20,500.00 Aggravation, Inconvenience, Annoyance [4]

Pltfs' Resp. to Keystone's Mot. to Dismiss, ECF No. 23. The Court cannot conclude that any of these claims are legally impermissible or made in bad faith.[5]

  In addition, Plaintiffs claim that Defendants are liable for punitive damages. Punitive damages are recoverable under the MMWA for breach of warranty only if they may be recovered in a breach of warranty action brought under the governing state law. *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir.1983). Given that West Virginia is the state in which the Sales Contract was executed, its law governs. Under West Virginia law, punitive damages are generally unavailable in a breach of contract action absent an "independent, intentional tort committed by the defendant." *See Berry v. Nationwide Mut. Fire Ins. Co.*, 381 S.E.2d 367 (W. Va. 1989). Several courts have recognized that fraud and misrepresentation are independent, intentional torts under this doctrine. *See, e.g.*, *Med-Surg Grp., Inc. v. Aetna Health Mgmt., Inc.*, 832 F. Supp. 2d 659, 661 (S.D. W. Va. 2011).

  Plaintiffs sufficiently alleged fraudulent misrepresentation and concealment, claiming that Setzer's knew that the Keystone campers were defective but concealed that fact from Plaintiffs before the sale. According to the Complaint, a Setzer's employee told Plaintiffs after

---

[4] Pursuant to the Court's ability to broadly interpret pro se claims, the Court has construed Plaintiffs' loss of income and loss of use claims as additional claims for relief based on inconvenience.

[5] The Court has excluded from the calculation Plaintiffs' request for attorneys' fees and damages for loss of consortium. Attorneys' fees are excluded from the jurisdictional calculation under the MMWA, *Saval*, 710 F.2d at 1032, and the Court is not aware of any West Virginia precedent that permits plaintiffs to recover for loss of consortium pursuant to an injury for breach of contract. The Court has also excluded Plaintiffs' claim for $6,723.86 in loan payments because it appears that this claim overlaps with "Camper Financing."

the sale: "a lot of times Keystone campers' windows will leak around the weep holes" and that "a lot of times Keystone campers leak around the vents were [sic] Keystone puts them together." Compl. ¶¶ 444, 472. Therefore, the Court finds that Plaintiffs' claim for punitive damages is plausible, that the amount in controversy is at least $50,000, and that the Court has jurisdiction under the MMWA. Keystone's Motion to Dismiss is **DENIED**.

### B. Defendant Setzer's Partial Motion to Dismiss

The Court will now turn to Setzer's Motion for Partial Dismissal. Setzer's argues that Counts III, VI, IX, XIV, and XV fail to state a claim upon which relief can be granted, and therefore, should be dismissed under Rule 12(b)(6).[6] The Court agrees.

#### (1) Counts III, XIV, and XV

Plaintiffs plead three counts that are not causes of action for which relief may be granted: Count III (shaken faith), Count XIV (joint and several liability), and Count XV (punitive damages). The Court dismisses these counts under Rule 12(b)(6). However, in doing so, the Court expresses no opinion as to whether the shaken faith doctrine applies within the context of other claims, whether Defendants are jointly and severally liable, or whether punitive damages may be a permissible remedy.

#### (2) Count IX

Next, Setzer's argues that Plaintiffs' negligence claims should be dismissed under the gist of the action doctrine. Under this doctrine, recovery in tort will be barred when any one of the following factors is present:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract

---

[6] Setzer's also moved to dismiss Count II (Revocation of Acceptance). However, after Plaintiffs clarified the cause of action in their response, Setzer's conceded that the claim was actionable.

>itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 577 (W. Va. 2013) (internal citations omitted). "If the action is not maintainable without pleading and proving the contract . . . it is, in substance, an action on the contract . . . ." *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 803 S.E.2d 519, 526 (2017) (quoting *Cochran v. Appalachian Power Co.*, 246 S.E.2d 624, 628 (W. Va. 1978)).

Plaintiffs claim that the Defendants' duty lay outside of the Sales Contract because "Defendants owed a common duty to diagnose, repair, and service the camper in a non-negligent manner." This argument is wholly without merit. Defendants' "duty to diagnose, repair, and service the camper" arises directly from the contractual relationship formed when Plaintiffs bought the camper. Plaintiffs contend that no contractual duty existed because the Sales Contract did not expressly contain a provision requiring repair. This point is belied by Plaintiffs' own argument that that Defendants were bound by an implied warranty of merchantability. The law does not impose such a warranty absent a contractual relationship. *See* W. Va. Code, § 46-2-314. Therefore, the fact that the warranty was not expressly included in the Sales Contract is inapposite. The Court dismisses Plaintiffs' negligence claims.

(3) Count VI

Plaintiffs also assert a cause of action for "Intentional Torts, Willfulness, Wantonness, Malice, Oppression, Reckless Conduct, Criminal Indifference to Civil Obligations, Aggravation of Wrong to the Mr. and Mrs. Murphy." It is unclear which intentional tort Plaintiffs intended to assert. As pleaded, Plaintiffs recite the standard for granting punitive damages, not a legal cause of action. *See Alkire v. First Nat. Bank of Parsons*, 475 S.E.2d 122 (W. Va. 1996) ("In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal

14

indifference to civil obligations affecting rights of others appear, or where legislative enactment authorizes it, jury may assess exemplary, punitive, or vindictive damages.")

To the extent that Count VI can be interpreted as a cause of action, the allegations most resemble intentional infliction of emotional distress or "tort of outrage." Under West Virginia law, a plaintiff must show that the defendant's "extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Harless v. First National Bank*, 289 S.E.2d 692, 693 Syll. 6 (1982). This definition is patterned after Section 46 of the *Restatement (Second) of Torts* which requires that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 704-05.

The only specific conduct Plaintiffs plead under this count is the allegation that Defendants blamed Plaintiffs for causing water damage in the camper. This does not rise to the level of outrageous conduct required under the law. Plaintiffs also assert general claims that Defendants acted "combative[ly] and argumentative[ly]," with "disrespect" and violated a duty arising out of "great public social policy." These are merely complaints of rudeness, which are inadequate to establish intentional infliction of emotion distress. Accordingly, the Court dismisses Count VI and **GRANTS** Setzer's motion.

## V. CONCLUSION

Consistent with this Opinion, the PF&R (ECF No. 40) is **REJECTED IN PART** and **ADOPTED IN PART**. The Court **DENIES** Keystone's Motion to Dismiss (ECF No. 17) and Plaintiffs' Motion to Amend or Remand (ECF No. 24). The Court **GRANTS** Defendant Setzer's Motion for Partial Dismissal (ECF No. 12) and **DISMISSES** the following claims:

    Count III    Shaken Faith

        Count IX     Negligence

        Count IV     Intentional Torts

        Count XIV    Joint and Several Liability

        Count XV     Punitive Damages

The remaining claims are **REFERRED** back to the Magistrate Judge for pretrial management and submission of proposed findings of fact and recommendations consistent with this Court's June 16, 2020 Standing Order (ECF No. 7).

The Court **DIRECTS** the Clerk to send a copy of this Opinion to counsel of record and any unrepresented parties.

                                  ENTERED: January 29, 2021

                                  ROBERT C. CHAMBERS
                                  UNITED STATES DISTRICT JUDGE